## JOYNER *v.* BANK OF MENLO.

1. A creditor holding a valid waiver of homestead exemption from his debtor, but having no lien, may apply for a stay of discharge in a court of bankruptcy, and the State court will impound the property set apart in the court of bankruptcy upon the claim for exemption, and subject it to the plaintiff's demand when he obtains a lien; but notes of the debtor containing such waivers do not give to the creditor any lien, equitable or otherwise, on the property of the bankrupt set apart to him as a homestead exemption, and the discharge of the bankrupt will prevent the creditor from obtaining a judgment in rem against exempted property and from subjecting it to his debt, such debt not falling within any of the exceptions specified in the bankrupt act.

2. The bankrupt act provides that creditors shall have thirty days notice by mail of the bankrupt's application for discharge; and No. 57 of the Forms in Bankruptcy requires additional notice by publication.

(a) Compliance with the requirement of thirty days notice to creditors of the bankrupt's application is essential to the validity of the discharge, and is so far jurisdictional that no petition will be acted upon without proof that the required notice has been given.

(b) A discharge granted by a court having jurisdiction of the bankrupt's estate can not be treated by any other court as void as to any particular creditor, on the theory that the bankrupt court never acquired jurisdiction of his person because he was not served with notice of the application for discharge. Lack of such notice can only be taken advantage of by the creditor in a direct proceeding in the bankrupt court to revoke the discharge, or by a proceeding in equity in a proper case made to set the same aside.

(c) Even if the plaintiff could collaterally impeach the bankrupt's discharge for lack of notice of his application therefor, the plaintiff did not make out by its proof a case which would authorize the grant of this relief.

3. The court erred in directing a verdict for the plaintiff.

No. 3797. NOVEMBER 15, 1923.

Receivership, etc. Before Judge Irwin. Chattooga superior court. March 13, 1923.

On Oct. 4, 1921, Joyner, upon his voluntary petition, was adjudged a bankrupt. The trustee in bankruptcy duly set aside to Joyner as an exemption certain property. On Dec. 9, 1921, the Bank of Menlo filed its equitable petition in which it alleged that Joiner was indebted to it on twelve promissory notes in which he had waived all right to homestead or exemption, and prayed for the appointment of a receiver to take possession of said exempted property, sell the same, and apply the proceeds to the indebtedness due by Joyner to it on the notes. On Aug. 12, 1922, the court appointed a receiver for this property, with direction to take charge thereof and sell the same with certain stated exceptions, and "to report the result thereof to this court promptly for further instructions as to the disposition of the proceeds." On Aug. 18, 1922, Joyner filed his petition in which he set up that prior to Aug. 12, 1922, he had been regularly and finally discharged in bankruptcy, and prayed that the order appointing a receiver be vacated. On Sept. 18, 1922, Joyner filed his answer to the petition of the bank, in which he set out in detail that the notes were tainted with usury; and he sought to recover from the plaintiff the amount of usurious interest paid. He further set up that on April 15, 1922, in the United States district court for the western division of the northern district of Georgia, he had as a bankrupt

been regularly and finally discharged from all debts and claims provable against him in bankruptcy, that the notes of the plaintiff were provable debts, and that since April 15, 1922, his debts to the bank on said notes had been fully and finally discharged.

On March 12, 1923, the case came on for trial before a jury. The plaintiff introduced the twelve notes. Thereupon the defendant introduced his discharge in bankruptcy, which was in due form and dated April 15, 1922. In rebuttal J. C. Chamblee testified for the plaintiff, that for a number of years he was cashier of the Bank of Menlo, R. A. McWhorter, who is now president, then being its president; that during all the time of the matters and transactions with Joyner, including the making of the twelve notes and his proceedings in bankruptcy, he was in active charge of the bank's office and business; that most, if not all, of said notes are renewals of former notes; that in all of these notes and in making the renewals the bank charged Joyner interest in excess of 8 per cent. per annum; that he would say the average rate was about 10 per cent. per annum; that so far as he knew no notice came or was given to the bank of Joyner's application for discharge in bankruptcy, or of the time and place for hearing the same; that the mail for the bank usually passed through his hands; that no such notice came to him, or through him to the bank; and that he saw in the Summerville News no notice of such application for discharge or hearing thereof. In reply Joyner testified, that in taking and renewing the notes the plaintiff charged him, throughout all the transactions, interest running from 12 per cent. to about 23 per cent. per annum; that the amount of interest charged was almost exactly as stated and tabulated in his original answer to the petition in this case; that said tabulation states substantially the truth as to usury in these notes; that he regularly applied for his final discharge in bankruptcy in the United States district court, which was granted on April 15, 1922; and that before his discharge was granted he saw in the Summerville News, the official county newspaper of Chattooga County, his notice of his application for discharge and of the time and place for its hearing.

At the conclusion of the evidence the plaintiff, conceding the presence of usury in these notes, moved the court to direct a verdict in its favor in the sum of $970, to which the property described

in its petition should be subjected as prayed. The court directed a verdict for plaintiff as prayed, and a decree was rendered in its favor, in which the exempted property was subjected to the payment of said sum. Joyner excepted to the verdict and to the decree, on the grounds: (1) that an issue of fact as to the amount of usury was involved; and (2) that his discharge in bankruptcy fully discharged him from his indebtedness to the bank.

*Henry & Jackson,* for plaintiff in error.

*Maddox, Lipscomb & Matthews,* contra.

HINES, J. 1. A creditor holding a waiver of homestead exemption from his debtor, but having no lien, may apply for a stay of discharge in a court of bankruptcy, and the State court will impound the property set apart in a court of bankruptcy upon the claim for exemption, and subject it to the plaintiff's demand when he obtains a lien. *Bell* v. *Dawson Grocery Co.,* 120 *Ga.* 628 (48 S. E. 150) ; *Bowen* v. *Keller,* 130 *Ga.* 31 (60 S. E. 174, 124 Am. St. R. 164) ; *McBride* v. *Gibbs,* 148 *Ga.* 380, 384 (96 S. E. 1004) ; Meinhard *v.* Pincus, 200 Fed. 736. Notes of his debtor which contain waivers of exemption rights do not give to the creditor any lien, equitable or otherwise, on the property of the debtor which he had scheduled in bankruptcy and which had been set apart to the bankrupt as a homestead exemption. *Coffey* v. *Mitchell,* 139 *Ga.* 430 (77 S. E. 561). If the creditor holding such notes fail to apply to the bankruptcy court for an order staying the grant of a discharge of the bankrupt until his right under the waivers of exemption in such notes could be enforced in the State court, and a discharge is granted to the bankrupt, such discharge will prevent the creditor from obtaining a judgment in rem against the exempted property and from subjecting it to his debt, such debt not falling within the exceptions specified in the bankruptcy act. *Bowen* v. *Keller,* supra; *Richards* v. *Shields,* 138 *Ga.* 583 (75 S. E. 602) ; *Valdosta Guano Co.* v. *Green,* 149 *Ga.* 610 (101 S. E. 538).

2. The bankrupt act, § 58(9), provides that creditors shall have thirty days notice by mail of the bankrupt's application for discharge. U. S. Comp. Stat., § 9642. Number 57 of the Forms in Bankruptcy requires additional notice by publication. Compliance with the requirement of thirty days notice by mail to creditors of the bankrupt's application is essential to the validity

of the discharge, and is so far jurisdictional that no petition will be acted upon without proof that the prescribed notice has been given. In re Sykes, 106 Fed. 669; Lathrop v. Stuart, 5 McLean, 167; In re Langfeldt, 253 Fed. 458; Black's Bankruptcy, § 687. This is the rule when the petition for discharge is under consideration, or an effort to revoke a discharge is made. Two questions then arise in this case. One is: Can a creditor collaterally attack and impeach a discharge on the ground that notice of the bankrupt's application therefor was not mailed to him? The other is: Did the creditor show lack of notice to him of the bankrupt's application for a discharge? The bankrupt act, § 21f, declares that "A certified copy of an order . . granting or setting aside a discharge, not revoked, shall be evidence of the jurisdiction of the court, the regularity of the proceedings, and of the fact that the order was made." U. S. Comp. Stat. 1916, § 9605. Is such order conclusive in a collateral attack on the bankrupt's discharge? While the discharge in a direct proceeding might be revoked for want of notice to the creditor, or might be set aside in equity in a proper case made, it can not be collaterally attacked for this reason. A discharge granted by a court having jurisdiction of the bankrupt's estate can not be treated by any other court as void as to any particular creditor, on the theory that the bankrupt court never acquired jurisdiction of his person, because he was not served with notice of the proceedings, including the application for discharge; and this is so although the name of the creditor was purposely omitted from the list of creditors, or although the omission to serve him with notice was fraudulent and intentional. Allen v. Thompson, 10 Fed. 116; Benedict v. Smith, 48 Mich. 593 (12 N. W. 866); Sawyer v. Rector, 5 Dak. 110 (37 N. W. 741); Fuller v. Pease, 144 Mass. 390 (11 N. E. 694); Bailey v. Corruthers, 71 Me. 172; Black v. Blazo, 117 Mass. 17; Thornton v. Hogan, 63 Mo. 143; Brown v. Kroh, 31 O. St. 492; Williams v. Butcher, 12 N. B. R. 143; In re Walsh, 213 Fed. 643.

In Allen v. Thompson, supra, the court said: "Entire want of jurisdiction over the subject-matter may be taken advantage of at any time, and it is never too late to make the objection; and it may be even collaterally attacked. . . But where the objection goes merely to a want of jurisdiction of the person or the thing, there may be a waiver of the objection or restrictions as to the time and

manner of making it; the judgment becomes not void, but only voidable, and presumptions are indulged in favor of the jurisdiction, unless it be made to appear by direct proceedings that there was want of it." In Benedict v. Smith, supra, the name of the creditor did not appear in the list of creditors, and it was not shown that he had been served with any notice as required by the bankruptcy law. The creditor claimed that the discharge in bankruptcy was void as to him, for the reason that the bankruptcy court had never obtained jurisdiction of his person. In reply to this contention Judge Cooley said: "If bankruptcy proceedings were strictly proceedings in personam, this view would be unanswerable; but this is not the case. Jurisdiction over the estate empowers the court to make decree, and the decree is conclusive upon claims unless attacked for fraud in the bankruptcy court itself. Rev. St. U. S. 1878, § 5120. It cannot be attacked collaterally in other courts."

In Sawyer v. Rector, supra, the Supreme Court of Dakota held that a discharge in bankruptcy " cannot be attacked collaterally by showing that the plaintiff's name was fraudulently omitted from the list of creditors, that he was never made a party to the proceedings, and that no notice was given of the petition for discharge." In Fuller v. Pease, supra, the Supreme Court of Massachusetts held: " The validity of a discharge, under the United States bankruptcy act, can only be contested by application in the United States district court within two years, as provided by U. S. St. 1867, c. 176, § 34; and it makes no difference that the plaintiff's name was fraudulently omitted from the schedules, and that he knew nothing of the discharge until after the two years had passed." In re Walsh, supra, the court held: " That a bankruptcy court has no power to revoke a discharge on the ground that a creditor did not receive notice of the hearing of the application for the discharge, which was duly mailed."

We do not deem it necessary to quote further from the decisions cited above. While there are some authorities to the contrary, we think the true law is that a discharge in bankruptcy can not be collaterally attacked by a creditor on the ground that he did not have notice of the bankrupt's application for discharge. But conceding that such collateral attack can be made upon a judgment in a bankruptcy court granting a discharge to the bankrupt, did the

plaintiff made out a case? The evidence submitted by the plaintiff to support this contention was that delivered by a person who was its cashier during the period between the adjudication, of the defendant as a bankrupt and the date of the order granting him a discharge. This witness testified that the mail to the bank usually passed through his hands, that no such notice came to him or through him to the bank, and that he did not see in the Summerville News, the paper in which such notice should have been published, any notice of the' application for discharge or hearing thereof. It will be noted that this witness does not swear that notice of the bankrupt's application for discharge was not duly mailed to the bank, or that such notice was not duly published. If this notice had not been duly published, proof of this fact was easily accessible to the plaintiff. Examination of the newspaper in which the notice should have appeared would have disclosed that it had or had not been published. Furthermore, it does not appear that this witness received and handled all the mail which came to the plaintiff during this period. Besides, the statute only requires that such notice should be duly mailed to the creditors of the bankrupt. If such notice was duly mailed and published, the bankrupt act does not require more from the bankrupt. In the absence of proof that the notice was not duly mailed and published, we do not think that the plaintiff made out a case, even if it could have collaterally impeached the discharge in this case. At the utmost the plaintiff could only claim the right to have this question of fact decided by a jury, and was not entitled to have a verdict directed against the defendant on this issue. In re Walsh, 213 Fed. 643.

4. Under the above rulings, the court erred in directing a verdict for the plaintiff.

*Judgment reversed. All the Justices concur.*